**In re Donna THOMAS.**

**BOARD OF EDUCATION OF CAPE GIRARDEAU SCHOOL DISTRICT NO. 63, Plaintiff/Respondent,**

v.

**Donna THOMAS, Employee/Appellant.**

No. 68411.

Missouri Court of Appeals, Eastern District, Division Two.

June 4, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1996.

Application to Transfer Denied Aug. 20, 1996.

Albert C. Lowes, Lowes & Drusch, Cape Girardeau, for Appellant.

Diane C. Howard, Limbaugh, Russell, Payne & Howard, Cape Girardeau, for Respondent.

CRANDALL, Judge.

Donna Thomas (teacher) appeals from the judgment of the trial court affirming the decision of the Board of Education of Cape Girardeau School District No. 63 (Board) to dismiss teacher from her tenured teaching position. The Board terminated teacher's contract for immoral conduct. *See* § 168.114.1 (2), RSMo (1994). We affirm.

Teacher had taught ninth grade English in Cape Girardeau District No. 63 since 1975. Her teaching record was exemplary. Teacher and her husband were living apart, and her husband was involved with Ms. Cheryl Litzelfelner. On July 23, 1994, teacher drove to her estranged husband's home and parked her car behind Litzelfelner's car. The pair exchanged words, and teacher then went inside the house. Meanwhile, Litzelfelner scratched "bitch" on teacher's car, got into her own car and prepared to leave. Teacher came out of the garage with a Smith and

Wesson .357 caliber revolver and began firing in Litzelfelner's direction. The first bullet went through the driver's side door and entered Litzelfelner's lower right leg. Litzelfelner managed to speed away through the front yard while teacher continued to fire at her car. All in all, four shots were fired, with three bullets actually hitting the car, including the bullet that injured Litzelfelner.

Since the incident occurred in the summer, the junior high school principal, Dr. Barnes, did not hear about it until two days later. On July 30, 1994, Barnes met with teacher to hear her version of the incident. The Board brought charges against teacher on August 18, 1994, alleging immoral conduct and seeking termination of her contract.

At the September 12, 1994 public hearing, the assistant prosecutor testified to the pending charges against teacher, and also testified to a 1993 property damage misdemeanor involving Litzelfelner for which teacher received a suspended sentence. He further testified that he had heard of the estranged husband's affair and of a prior confrontation between teacher and Litzelfelner. The junior high principal then testified that students and teachers were aware of the shooting. The human resources director testified that the teacher's violent action would confuse students who are taught that "we are a gun-free, violence-free environment." In addition to the moral dilemma presented to the students, the director testified that having teacher continue in her position would create a difficult situation for other teachers and parents because her actions contravened school policy and her role as an authority figure and role model for students. The superintendent of schools testified that he had received a call from the teachers' association expressing concern. The association had received a number of calls about the shooting and teacher's continued employment.

At the September 27, 1994 Board meeting, teacher's contract was terminated by unanimous Board vote. On September 30, 1994, the Board's decision, including twenty-seven findings of fact and three conclusions of law, was signed by the Board president and a copy delivered to teacher's attorney.

Teacher first contends the Board improperly defined immoral conduct and that the evidence presented was insufficient to show a nexus between her conduct and performance of her duties.

■ Since teacher's challenge is to the Board's interpretation of the law to the facts, the scope of review is less restricted than pure factual dispute. *Youngman v. Doerhoff*, 890 S.W.2d 330, 332 (Mo.App. E.D.1994). The evidence and resolution of factual issues may be weighed independently, but due weight is given to the opportunity of the agency to observe witnesses, and to the expertness and experience of a particular agency. § 536.140.3, RSMo (1994).

■ "Immoral conduct" is that conduct which renders a teacher unfit for the performance of her duties. *Ross v. Robb*, 662 S.W.2d 257, 259 (Mo.banc.1983). That the conduct renders the teacher unfit to teach is a limitation, not a definition of immoral conduct. *Youngman*, 890 S.W.2d at 340 n. 7. Immoral conduct contemplates behavior "sufficiently contrary to justice, honesty, modesty or good morals, or involving baseness, vileness or depravity so as to support the inference that the teacher understands the conduct to be wrong." *Id.* at 341. "Immoral conduct is conduct which is always wrong." *Id.* at 342. The consciousness of wrongdoing serves as notice of immoral conduct to the teacher. *Id.* at 341.

■ Teacher argues that immoral conduct means conduct which affects performance only when such conduct occurs on school grounds, directly involves students or school property, or occurs only when a teacher is acting in her official capacity. Although such factors may be relevant, the determination of immoral conduct is not limited to those situations. *Youngman*, 890 S.W.2d at 340 n. 7. We agree with the Board that the intentional shooting of another without legal justification or excuse was sufficiently contrary to justice and good morals to meet the definition of immoral conduct.

■ Once conduct is found immoral, then it must be determined if such conduct renders teacher unfit to teach. *Ross*, 662 S.W.2d at 259. Factors include: (1) the age and maturity of the teacher's students; (2) the likelihood that the teacher's conduct will

have an adverse effect on students or other teachers; (3) degree of anticipated adversity; (4) proximity of the conduct; (5) extenuating or aggravating circumstances surrounding the conduct; (6) likelihood that the conduct would be repeated; (7) underlying motives; and (8) the chilling effect on the rights of teachers. *Thompson v. Southwest School District*, 483 F.Supp. 1170, 1182 (W.D.Mo. 1980). The Board made findings of fact sufficient to support the *Thompson* factors. The Board found that ninth grade adolescents are very impressionable. The use of violence by a teacher to solve personal problems was likely to have an adverse effect on her students by confusing the violence-free message promoted by the school and the community. In addition, teacher's violent behavior would adversely affect other faculty and parents because her conduct was a breach of both policy and law, impacting her role as a role model and authority figure. The Board found a classroom teacher is one of the most important role models for adolescents. Teacher's actions contradicted the message sent by the school district, presenting a "do as I say, not as I do" dilemma for her students. The Board found her actions might provide a "license" for students to model her behavior instead of her words. The Board also concluded that no justification was provided by teacher's marital problems.

Teacher argues that it is necessary to show the conduct actually harmed her performance to meet the required nexus. This assertion is contrary to established law, since only a likelihood that the teacher's conduct will have an adverse effect on students or other teachers need be demonstrated. *Thompson*, 483 F.Supp. at 1182. This likelihood was shown by the Board's findings that teacher's students were at an impressionable age and would receive a mixed message about violence if she continued to teach. In addition teacher's relationship with parents and other teachers would be damaged because of discomfort with her breaking the law and remaining in a position of authority. These findings are enough to show that teacher's conduct rendered her unfit to teach.

Teacher further argues that § 168.114.1(6) protects her due process

rights by making it necessary for the Board to wait until she was convicted before it could terminate her contract. The statute says in part: "(1) An indefinite contract with a permanent teacher shall not be terminated by the Board [ ] except for one of the following causes: ... (2) Immoral conduct; ... (6) Conviction of a felony or a crime involving moral turpitude." § 168.114, RSMo (1994). Teacher was not terminated for conviction of a crime involving moral turpitude, but rather, for immoral conduct. The Board did not violate teacher's due process rights by proceeding with its action without waiting for resolution of the criminal charges. *See Clark v. Wentzville R–IV School District*, 848 S.W.2d 608, 609 (Mo.App. E.D.1993). The Board's findings demonstrated that the teacher's conduct renders her unfit to teach. Teacher's first point is denied.

Teacher's final point is that the Board's decision was not in final reviewable form because it was drafted after the Board meeting and signed only by the Board president, so the findings of fact outlined in the Decision were not made by the Board. Teacher cites to *Stewart v. Board of Educ. of Ritenour Consol. School Dist.* in support of this assertion. 538 S.W.2d 765 (Mo.App. 1976). In *Stewart*, the decision of the Board was contained in a letter sent to the teacher, not in the Board minutes. *Id.* at 766. No findings, conclusions, or opinions other than the letter were made part of the record. *Id.* That case can be distinguished from the case at hand. Here, the Board, in the September 27, 1994 minutes, called for counsel to draft formal findings of fact and conclusions of law based on the information discussed at the hearing, and authorized the president to sign such findings and conclusions for the Board. This incorporated the findings of fact and conclusions of law into the minutes, making them an official part of the record. The teacher's attorney received a copy of the decision. Teacher's second point is denied.

The judgment of the trial court is affirmed.

CRAHAN, P.J., and DOWD, J., concur.